## CHARLES J. GORHAM
## v.
## JOHN FARSON ET AL.

1. LIEN — OF JUDGMENT — CONDITIONAL SALE.— Where a judgment debtor is a holder of a mere equitable estate in land under a contract of sale from the owners, and the latter hold the legal title as security for the payment of the purchase money, a judgment creditor's lien is subject to such legal title and to all such rights in the land as were secured to the owners by the contract; and the interest of such owners in the land under these circumstances is not that of a vendor's lien.

2. PRACTICE—DURING APPEAL FROM SPECIAL ORDER.—It was not improper for the trial court to proceed with the hearing of the cause while an appeal from an order therein awarding possession of the mortgaged premises *pendente lite* was pending in the Appellate and Supreme Courts, so long as the question of possession of the premises *pendente lite* was in no way material to a final hearing of the cause and the entry of a decree of foreclosure and sale.

APPEAL from the Superior Court of Cook county; the Hon. HENRY M. SHEPARD, Judge, presiding. Opinion filed April 28, 1886.

On the first day of May, 1881, Preston, Kean & Co., by their agent, James Payne, entered into a contract in writing with Gilbert A. Colby, whereby they demised to him block four in Hubbard, Crocker & Stone's subdivision, etc., in Cook county, on which were situated certain smelting works, for

Gorham v. Farson.

the term of three years, reserving as rent the sum of $100 per month during the term; and in and by said contract said Preston, Kean & Co. agreed to sell, and said Colby to purchase said premises within said three years, for $15,000, of which sum $5,000 was to be paid down, $5,000 in one year and $5,000 in two years, with interest at the rate of six per cent. per annum on the deferred payments, said payments to be secured by a mortgage or deed of trust on the premises; and it was provided, that on the payment by Colby of $5,000, the rent under the agreement was to cease, but in case of his failure or refusal to make the purchase, the agreement might be enforced against him, and Preston, Kean & Co. might retain, as liquidated damages for the breach of the contract, all the machinery and improvements put on said premises by him. By the same instrument Preston, Kean & Co. also agreed to sell, and said Colby to purchase lots six, seven and eight, in block four, in Day's subdivision, etc., in said county, for $1,300 and interest from the date of the contract at the rate of six per cent. per annum, such payment to be made within one year from that date.

After the execution of the contract Colby formed a copartnership with his son and one Gardner, under the firm name of Colby, Gardner & Co., for the purpose of manufacturing plows, and said firm thereupon took possession of said property under said contract, and placed upon it a considerable amount of machinery and other improvements. On the 31st day of May, 1881, said firm borrowed of Preston, Kean & Co. the sum of $3,000 for ninety days, and gave their promissory note therefor, and on or about the 1st day of October, 1881, the firm failed, being then indebted to Preston, Kean & Co. for the full amount of said loan and for the further sum of $200 rent for said premises then in arrears. It being impossible at that time, as it seems, for Colby or his firm to pay said indebtedness or any portion of the purchase money of said premises, it was arranged between him and Preston, Kean & Co. that the latter should at once convey said premises to Colby and take back from him a deed of trust securing the entire purchase money, and also the indebtedness for borrowed money and for rent. This arrangement was

carried out, both instruments being dated October 1, 1881. The deed of trust, which run to John Farson, as trustee, secured four promissory notes of even date therewith, executed by Colby, payable to his own order and by him duly indorsed, all drawing interest at the rate of seven per cent. per annum, payable annually, one being for $4,500 due six months after date, and the other three for $5,000 each and maturing respectively on the 1st day of May, in the years 1884, 1885 and 1886. It was further provided in the deed of trust, that in case of default in the payment of the principal or interest, or any part thereof, the whole of the notes should, at the election of the holder, become due and payable.

At the time of executing the deed of trust, the firm of Colby, Gardner & Co. sold, assigned and transferred to Preston, Kean & Co. all their stock, materials, machinery and personal property then on said premises, it being agreed that the same should be sold and the proceeds applied to the payment of the note for $4,500, in which was embraced the indebtedness for borrowed money and for rent. Preston, Kean & Co. afterward took possession of said personal property and sold a portion of it, realizing $436.15. Gardner thereupon filed his bill for a dissolution and settlement of the partnership, making Preston, Kean & Co. parties, and a receiver being appointed in that suit, Preston, Kean & Co. turned over to him the residue of the personal property in their hands, and he afterward sold it under an order of the court for $311.45. The receiver also sold the interest of the firm in said real estate for $345, said sale taking place April 1, 1882, Allen Breed being the purchaser, and said sale was afterward confirmed by the court. Breed then entered into possession of said real estate and held possession thereof by himself and tenants until after the commencement of the present suit.

The present bill was filed by John Farson, the trustee, to foreclose said deed of trust. The bill alleges that said Colby, on executing and indorsing said notes, delivered them to Preston, Kean & Co., and that they indorsed and delivered the same to Frederick W. Hayes, and that he was then the owner

and holder thereof, and that neither of said notes nor any part thereof, had been paid, and that said Hayes, by virtue of the terms of the deed of trust, had elected to declare all of said notes due and payable.    It appears, however, that prior to the decree, said notes had become the property of Preston, Kean & Co.    The bill further alleged that said Colby was wholly insolvent, and had departed from this State, and that said premises were insufficient security for the money due on said notes.

Charles T. Gorham, the appellant, was made a defendant, under an allegation that he had or claimed some interest in the mortgaged premises or some part thereof, as purchaser, mortgagee, or otherwise, but that such interest was subsequent to the lien of said deed of trust and subject thereto.    A receiver was appointed shortly after the filing of the bill, at the instance of the complainant, who rented the mortgaged premises by order of the court to one Lamb, who went into possession thereof and paid rent therefor.    Gorham afterward appeared and answered, alleging that on the 10th day of October, 1879, he recovered a judgment in the Superior Court of Cook county, against said Colby, for $5,500 and costs, and immediately caused execution to be issued thereon; that upon the purchase of said mortgaged premises by Colby, said judgment became a lien thereon, and that said Gorham, on the 14th day of February, 1883, caused said premises to be sold under said judgment, and became the purchaser and received a sheriff's certificate of purchase therefor, and that on the 20th day of May, 1884, said premises not having been redeemed from said sale, said Gorham received a sheriff's deed therefor.

Gorham subsequently moved that the receiver be discharged and the possession of said premises be turned over to him, and an order was entered on said motion, providing that on Gorham's entering into a bond to the complainant in the sum of $5,000, conditioned to account to the court for all moneys derived from the use of said premises, and also conditioned that said Gorham should ratify the lease to Lamb, or else that the obligors should be liable for the rent of the premises at the same rate as reserved in said lease, the receiver should

Gorham·v. Farson.

surrender the possession of said property to Gorham. In compliance with this order, Gorham filed his bond which was approved. The order discharging the receiver and awarding possession of the premises to Gorham was brought to this court by writ of error, and by order of this court said writ was made a supersedeas. The writ of error was afterward dismissed by this court, and such order of dismissal was thereupon taken to the Supreme Court by writ of error which writ was in like manner made a supersedeas by that court, and was pending at the time of the final hearing and decree in this case in the court below.

By the decree, the deed of trust was declared to be a lien, as against the title of Gorham, derived through his judgment and execution sale, on lots six, seven and eight, in block four, in Day's subdivision, etc., only to the extent of $1,300, and interest thereon at the rate of six per cent. per annum, from May 1, 1881, making $1,642.35, and on block four, in Hubbard, Crocker & Stone's subdivision, etc., only to the extent of $15,000, and interest thereon at the rate of six per cent. per annum from October 1, 1881, making $18,825, and it was ordered that said Gorham might redeem said premises within thirty days from the date of the decree by the payment of said sums and six per cent. interest thereon, from that date, and that in default of such redemption, said premises should be sold by the master, and the proceeds applied to the payment of costs and expenses of sale and the satisfaction of said first liens, created by said deed of trust, and the surplus brought into court. By a subsequent order modifying said decree, it was provided that if any other person than Preston, Kean & Co., the holders of the lien under the trust deed, should become the purchaser, all the proceeds of the sale, after paying costs, disbursements, etc., should be brought into court to await its further order. From this decree Gorham has appealed to this court.

Messrs. Abbott & Johnson and Mr. E. A. Crane, for appellant; that it makes no difference with Gorham's lien, whether the contract was recorded or not, and it attaches to

rights under the land contract as soon as it is made, cited Rogers v. Brent, 5 Gilm. 573 ; Tenney v. Walston, 41 Ill. 215; Niantic Bk. v. Dennis, 37 Ill. 381; Ryhemer v. Frank, 105 Ill. 327 ; Walsh v. Richards, 41 Mich. 593 ; Markoe v. Andras, 67 Ill. 34; Freeman on Judgments, 2d Ed., § 356.

Mr. MORTON CULVER, for appellees.

BAILEY, P. J.    A large number of errors are assigned in this case, most of which we do not deem it necessary to discuss further than to say that we have examined the record with attention, and are of the opinion that the decree should be in all respects affirmed.    It does not appear to be questioned that the judgment recovered by Gorham, the appellant, against Colby, became a lien upon Colby's interest in the premises covered by the deed of trust, the instant such interest was acquired by Colby, under the contract with Preston, Kean & Co., of May 1, 1881, and his lien having thus accrued, it is not claimed that it could be changed or extinguished without his consent, by any subsequent transaction or agreement between Colby and Preston, Kean & Co.    This seems to have been the view taken by the court below, and it was manifestly upon this theory that the decree was rendered.    Although the deed of trust in some respects changed the rights and obligations of Colby in relation to said land, by providing for the payment of a higher rate of interest, by securing on the land an indebtedness for borrowed money, etc., the decree, so far as Gorham was concerned, remitted the parties to their rights as they existed under the contract, and relieved Gorham from all the additional burdens imposed upon the land by the stipulations contained in the deed of trust.

Counsel for the appellant are clearly in error in the view taken by them, and which seems to lie at the foundation of their argument, that the interest of Preston, Kean & Co. in said premises, prior to the conveyance to Colby and the execution by him of the deed of trust, was merely that of a vendor's lien.    Their interest was not a vendor's lien nor anything of that nature.    Colby was a holder of a mere equitable estate in

the land under a contract of sale, and Preston, Kean & Co. held the legal title as security for the payment of the purchase money. Hansbrough v. Peck, 5 Wallace, 506. Gorham's lien was subject to such legal title, and to all such rights in the land as were secured to Preston, Kean & Co. by the contract.

It is claimed that, by including other indebtedness in the deed of trust, and stipulating for a higher rate of interest, Preston, Kean & Co. must be deemed to have waived and abandoned their security so far as Gorham is concerned, so as to postpone their lien to his. Whatever may be the rule applicable to vendor's liens, we can not see that such consequences should follow in this case from such changes in the form or terms of the security. The execution of a deed of trust to secure the deferred payments of purchase money was contemplated and stipulated for in the contract, and all the additional burdens placed upon the land by the deed of trust are easily separable from those imposed by the contract. The decree enforced the deed of trust to the extent of Preston, Kean & Co.'s prior lien as it existed by virtue of the original contract, and we see no equitable ground of complaint on Gorham's part, nor are we aware of any rule, either equitable or technical, which forbids its enforcement to that extent. The numerous authorities cited by the counsel do not seem to us to have any application.

The point is made that no steps should have been taken in the case during the pendency in this court, and in the Supreme Court, of the writ of error bringing up for review the order of the court discharging the receiver and awarding possession of the mortgaged premises *pendente lite* to Gorham. The writ in each court having been made a supersedeas, it was clearly improper for the court below, during the pendency of such writ, to proceed with the execution of the order thus brought up for review. But the effect of the supersedeas was only to stay the execution of that particular order and had no effect, as far as we can see, upon any other proceeding in the case. It does not appear that any steps were taken to enforce the order by turning possession of the property over to Gor-

ham, or that the court has not in all respects obeyed the supersedeas. The question ·of possession of the mortgaged premises *pendente lite* was in no way material to a final hearing of the bill and the entry of a decree of foreclosure and sale. We see no reason why it was not proper for the court to proceed with the hearing as it has done, reserving the question of the disposition of the assets in the hands of the receiver until the writ of error is finally disposed of.

As we find no error in the record the decree will be affirmed.

Decree affirmed.